Virginia QUIGLEY and James Quigley, Plaintiffs–Appellants,

v.

William JOBE, Defendant–Appellee.

No. 91CA1817.

Colorado Court of Appeals,
Div. V.

Nov. 19, 1992.

As Modified on Denial of Rehearing
Dec. 24, 1992.

Certiorari Denied May 10, 1993.

Branney, Hillyard, Kudla and Jurdem, M. Susan Kudla, Michael Turner, Englewood, for plaintiffs-appellants.

Cooper & Kelley, P.C., Paul D. Cooper, Regina M. Rodriguez, Denver, for defendant-appellee.

Opinion by Judge HUME.

In this action for medical malpractice, plaintiffs, Virginia and James Quigley, appeal a judgment entered on a jury verdict in favor of defendant, William Jobe. We affirm.

Virginia Quigley was referred to defendant with a lump in her right breast. Defendant testified that, following examination, he reported to the referring doctor that plaintiff was instructed to begin a self-palpation program and that she should, in the absence of clinical changes, be rechecked in six months. Plaintiff disputed she was given such recommendations and testified that she returned to a doctor one year after defendant's examination, at which time she was diagnosed with breast cancer. Plaintiffs brought suit against defendant alleging he was negligent when he gave improper advice or instructions regarding follow-up treatment of the lump in her breast.

Prior to trial, the court granted defendant's motion in limine to exclude evidence of risk management guideline provisions promulgated by the defendant's liability insurance carrier and contained in defendant's liability insurance contract. The risk management guidelines recommended a follow up examination for breast carcinoma within six weeks after the discovery of palpable dominant lesions.

Defendant signed the guidelines as a condition of insurance and below a caption which read: "I have read and understand the above [risk management] guidelines ... on ... Delayed Diagnosis Breast Carcinoma." Pursuant to the guidelines, defendant's signature indicated that he agreed to incorporate the guidelines into his practice "insofar as possible" and acknowledged that failure to comply with the guidelines could result in a "surcharge up to $25,000, or non-renewal" of his liability policy.

### A.

Plaintiffs first contend that the trial court erred in determining that the probative value of the offered guidelines was outweighed by their prejudicial effect. We disagree.

■ Evidence is relevant if it tends to make the existence of a material fact more or less probable than it would be without the evidence. *People v. Carlson,* 712 P.2d 1018 (Colo.1986); CRE 401.

■ A trial court is vested with broad discretion in determining whether evidence is relevant. *People v. Lowe,* 660 P.2d 1261 (Colo.1983). And, although relevant evidence is generally admissible, a trial court may exclude such evidence if its probative value is substantially outweighed by danger of unfair prejudice. *Munson v. Boettcher & Co.,* 832 P.2d 967 (Colo.App. 1991); CRE 402 & 403.

■ Here, the trial court determined that the guidelines were not relevant because they were promulgated by a private insurance company as part of an insurance contract and did not reflect a generally recognized standard of care within the medical profession. We agree with that

analysis. *See Lewis v. La Nier,* 84 Colo. 376, 270 P. 656 (1928).

■ The trial court further concluded that, to the extent the guidelines had any marginal relevance, their probative value was outweighed by the prejudicial effect of admitting evidence of the existence of defendant's insurance coverage, which differed from insurance coverage possessed by a co-defendant who is not a party to this appeal.

Because adequate support appears in the record for the trial court's rulings, we find no abuse of discretion here. *Johnson v. Smith,* 675 P.2d 307 (Colo.1984).

### B.

Plaintiffs next argue that the trial court erred in rejecting their argument that Virginia Quigley was a third-party beneficiary to defendant's professional liability insurance contract and that the guidelines governing that contract established duties owed to her by defendant. We disagree.

■ An insurance policy is a contract and should be interpreted consistent with established principles of contract law. *American Family Mutual Insurance Co. v. Johnson,* 816 P.2d 952 (Colo.1991).

■ A person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the third party, provided that such benefit is direct and not merely incidental. *Jefferson County School District v. Shorey,* 826 P.2d 830 (Colo.1992). The intent to benefit the third party must be apparent from the agreement terms, the surrounding circumstances, or both. *E.B. Roberts Construction Co. v. Concrete Contractors, Inc.,* 704 P.2d 859 (Colo.1985).

■ Correspondingly, an incidental beneficiary is one who is neither a promisee nor one to whom the promise is to be rendered but who is benefitted by the undertakings of the contracting parties. *Fourth & Main Co. v. Joslin Dry Goods Co.,* 648 P.2d 178 (Colo.App.1982).

■ Here, although patients may benefit from the implementation of the guidelines, there is no indication that defendant or his insurance carrier intended to provide a di-

rect benefit to any third party in adopting the guidelines. The insurance contract was intended to provide liability protection to defendant, and, as stated in that contract, the express purpose of the risk management guidelines was to attempt to "decrease the possibility of a malpractice case, increase the possibility of prevailing or decrease the eventual loss." The contract's explicit remedy for defendant's failure to implement the risk management guidelines was a possible surcharge or non-renewal by the insurance carrier and did not demonstrate an intention to create enforceable rights in or duties to third parties. *See, e.g., State Compensation Insurance v. Commercial Union Insurance Co.*, 631 P.2d 1168 (Colo.App.1981). Therefore, the trial court did not err in rejecting that argument.

### C.

Finally, the plaintiffs contend that the trial court erred in excluding the risk management guidelines because they were signed by defendant and, thus, constituted an admission of a party opponent as to the applicable standard of care. This contention is without merit.

A statement may be admissible as an adoptive admission against a party who has manifested his adoption or belief in its truth. CRE 801(d)(2). Here, however, the fact that defendant signed an insurance contract containing the risk management guidelines as a condition of obtaining insurance coverage does not indicate that he adopted the guidelines as the applicable legal standard of professional care owed to his patients. *See People v. Quinn*, 794 P.2d 1066 (Colo.App.1990). Thus, the risk management guidelines did not constitute an adoptive admission.

We conclude that the trial court did not abuse its discretion in excluding the risk management guidelines from evidence.

The judgment is affirmed.

JONES and MARQUEZ, JJ., concur.