Kelly BONSER, Petitioner,

v.

Todd H. SHAINHOLTZ,
D.D.S., Respondent.

No. 99SC301.

Supreme Court of Colorado,
En Banc.

June 12, 2000.

Rehearing Denied July 3, 2000.

Heckman & O'Connor, P.C., Brett Steven Heckman Edwards, Colorado Attorney for Petitioner.

Pryor Johnson Montoya Carney & Karr, P.C., Elizabeth C. Moran, Daniel M. Hubbard, Englewood, Colorado, Attorneys for Respondent.

Kennedy & Christopher, P.C., John R. Mann Denver, Colorado, Attorneys for Amicus Curiae Copic Insurance Company.

Justice RICE delivered the Opinion of the Court.

This court granted certiorari to address whether the court of appeals erred when it held that the trial court abused its discretion in admitting into evidence the fact that the respondent and his expert witness were insured by the same insurance trust (Trust). The court of appeals held that commonality of insurance was not admissible in this case because the evidence was not probative of bias, and there was substantial risk of prejudice. *See Bonser v. Shainholtz*, 983 P.2d 162, 165–66 (Colo.App.1999). We hold that evidence of commonality of insurance is admissible pursuant to CRE 403 and CRE 411 when there is a substantial connection between the witness and the insurance carrier.

Accordingly, we hold that the court of appeals erred when it reversed the trial court's ruling admitting evidence that the respondent and his expert witness were insured by the same Trust.

## I. Facts and Procedural History

Petitioner, Kelly Bonser, sued her dentist, Todd Shainholtz, D.D.S. (Respondent), for dental malpractice, alleging that treatment provided by Respondent caused temporal mandibular joint disorder (TMJ). The suit arose from treatment Petitioner received in late 1995. In October 1995, Petitioner visited Respondent for a dental check-up and cleaning. Following that visit, on December 13, 1995, Petitioner returned to Respondent to have two new fillings placed. Petitioner complained to Respondent that she was experiencing jaw pain. Respondent, prior to commencing with the fillings, questioned Petitioner about the pain, including the nature and location of the pain, when it began, and whether it was accompanied by any clicking or popping. Petitioner responded that there had not been any clicking or popping, that she had been experiencing the pain for a few weeks, and that she had not suffered from similar problems before. Respondent examined Petitioner's face and jaw, and listened and felt for popping or clicking. He then checked her bite and determined that her muscle soreness was due to a "premature" tooth that was hitting before other teeth when Petitioner bit down. Respondent filed down the premature tooth and then placed the two fillings that day.

Petitioner returned to Respondent's office two weeks later, complaining that his treatment caused TMJ. Subsequently, Petitioner filed suit against Respondent, alleging that Respondent was negligent in placing the fillings despite her jaw pain, and in failing to appreciate signs that she was predisposed to TMJ.

Prior to trial Respondent filed a motion in limine, seeking to exclude evidence that he had liability insurance and that he and his expert witness, Timothy Masterson, were insured by the same insurance Trust.[1] Petitioner argued that she was entitled to lay a foundation for and establish the relevancy of evidence at trial. The trial court agreed, deferring ruling until trial.

At the time of trial, the district court considered and denied Respondent's renewed motion in limine after determining that Masterson's financial interest in keeping insurance premiums low, his early involvement in organizing the Trust, and his resulting knowledge that the Trust only accepted dentists who were "high quality dentists" were relevant to proving bias. The trial court stated:

> I've reviewed the materials that were submitted and it seems to me that the insurance issue should probably come before the jury if desired on the basis of [the] bias issue, number one, the financial aspect, but number two the aspect that the Trust doesn't accept all dentists and potential bias from that issue. So I'll deny the motion in limine.

Subsequently, Respondent proceeded to introduce the testimony of his expert witness, Masterson, who was a member of the same insurance Trust as Respondent. Masterson testified at trial that the dental care provided to Petitioner met the standard of care for dentists practicing general dentistry and that Respondent's assessment of Petitioner's complaint of jaw pain was adequate and complete. Petitioner then cross-examined Masterson regarding his role as one of the founders of the Trust in the late 1970s, the standards for dentist admittance when the Trust was founded, and the fact that Masterson presently was insured by the Trust. Masterson testified that he was "pretty intimate" with the details of the trust, including that it was formed to offer insurance to "good quality dentists" and to exclude dentists whose standards did not measure up to the standards of the Trust. When asked, "So you and Dr. Shainholtz are insured by the same company?" Masterson

---

1. According to testimony at trial, the Trust was formed in the late 1970s as a way to insure qualified dentists and exclude dentists who did not meet the Trust requirements for quality. Currently, the Trust insures approximately 1500 dentists. Members pay premiums to fund the Trust and any settlements or judgments against a member dentist are deducted from the Trust.

**424**

replied, "Thankfully so, yes." Masterson testified that he assumed the standards for admittance into the Trust were still the same. When Petitioner questioned Masterson about whether an adverse judgment could increase his insurance premiums, Masterson acknowledged that any judgment would be deducted from the Trust and premiums accordingly could rise.

Following trial, the jury returned a verdict against Respondent and awarded $70,000 to Petitioner.

Respondent appealed to the court of appeals, which reversed, finding that the trial court abused its discretion in admitting into evidence the fact that Respondent and Masterson were insured by the same Trust. *See Bonser*, 983 P.2d at 164–65. The court of appeals found that the evidence was not admitted for any purpose other than to show a commonality of insurance, that the evidence was not probative of bias, and accordingly that such evidence was more prejudicial than probative. *See id.* at 165–66.

■ This court granted certiorari on the issue of whether the court of appeals erred when it held that the trial court abused its discretion in allowing evidence of insurance for purposes of bias and prejudice. We hold that the court of appeals erred when it reversed the trial court's admission into evidence that Respondent and his expert witness were insured by the same Trust because evidence of commonality of insurance is admissible pursuant to CRE 403 and 411 when there is a substantial connection between the witness and insurance carrier.

## II. Standard of Review

■ The scope and limits of cross-examination for bias are within the sound discretion of the trial court. *See People v. Walker*, 666 P.2d 113, 122–23 (Colo.1983). To constitute an abuse of discretion, a trial court's decision must be manifestly arbitrary, unreasonable, or unfair. *See Hock v. New York Life Ins.*, ˙876 P.2d 1242, 1251 (Colo.1994). In addition, when an appellate court reviews a trial court's ruling regarding the admissibility of evidence under CRE 403, it "must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *People v. Gibbens*, 905 P.2d 604, 607 (Colo.1995).

## III. Substantial Connection Test

This court historically has held that it is improper for a jury to be informed without good reason that a defendant is covered by insurance. *See Bolles v. Kinton*, 83 Colo. 147, 153, 263 P. 26, 28 (1928). The rationale behind this evidentiary limitation is obvious; in addition to being irrelevant to the issue of negligence, there is a risk that jurors may return a larger verdict if they know that an insurance carrier will be responsible for the damages. *See Smith v. District Court*, 907 P.2d 611, 612–13 (Colo.1995); *see also* John W. Strong, *McCormick on Evidence* 711–12 (5th ed.1999); Joanne R. Galbreath, Annotation, *Propriety and Prejudicial Effect of Trial Counsel's Reference or Suggestion in Medical Malpractice Case that Defendant Is Insured*, 71 A.L.R.4th 1025, 1029 (1989).

The Colorado Rules of Evidence reflect this principle. CRE 411 states:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

As indicated by CRE 411, evidence of insurance coverage may be admissible if it is offered for a distinct purpose, such as to prove agency, ownership, control, or bias of a witness. The trial court nonetheless may exclude evidence relevant to an issue such as bias if it determines that it is too prejudicial. CRE 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

We have not yet determined when evidence that a defendant and an expert witness share a common insurance carrier is admissible under CRE 403 to prove bias. However, other jurisdictions have addressed this issue and we look to their reasoning for guidance.

A majority of jurisdictions addressing this issue have applied a "substantial connection" analysis in order to balance the probative value and potential prejudice on the facts of each case. The substantial connection analysis looks to whether a witness has "a sufficient degree of 'connection' with the liability insurance carrier to justify allowing proof of this relationship as a means of attacking the credibility of the witness." *Otwell v. Bryant,* 497 So.2d 111, 115 (Ala.1986). These courts have rejected a mere "commonality of insurance" approach, holding that the likelihood of bias is so attenuated that the risk of prejudice substantially outweighs the probative value.[2] For example, the Alabama Supreme Court refused to allow evidence that an expert witness was insured by the same insurance carrier as the defendant when this was the only connection between the witness and the insurance carrier. *See id.* at 113–14. However, in another case that court allowed evidence that an expert witness was a member of the board of directors and was employed by the same liability insurer as the defendant. *See Hinton & Sons v. Strahan,* 266 Ala. 307, 96 So.2d 426, 431–32 (1957).

The Oklahoma Supreme Court also has applied the substantial connection test to determine the admissibility of insurance coverage of an expert witness. *See Mills v. Grotheer,* 957 P.2d 540, 543 (Okla.1998). That court stated that "a trial court must determine when an expert's connection to a defendant's insurer is probative enough to substantially outweigh the prejudice to defendant resulting from the jury's knowledge that defendant carries liability insurance." *Id.* The Oklahoma court pointed to a number of examples when a witness's interest would be direct enough to outweigh the prejudicial nature of the evidence, including when a witness is an agent, owner, or employee of the defendant's insurer. *See id.*

A number of other jurisdictions have applied this same substantial connection analysis. *See, e.g., Barsema v. Susong,* 156 Ariz. 309, 751 P.2d 969, 974 (1988) (holding that

the court committed error when it precluded evidence that the witness was the insurer's vice president and a member of the board of directors); *Kelley v. Wiggins,* 291 Ark. 280, 724 S.W.2d 443, 447 (1987) (finding there was no abuse of discretion in the admission of evidence of common insurance following a determination that the probative value outweighed the danger of prejudice); *Golden v. Kishwaukee Community Health Servs. Ctr. Inc.,* 269 Ill.App.3d 37, 206 Ill.Dec. 314, 645 N.E.2d 319, 325 (1994) (holding that evidence of a common membership in a mutual insurance company was barred, but evidence that one expert witness had performed significant economic services for the insurer was admissible); *Strain v. Heinssen,* 434 N.W.2d 640, 643 (Iowa 1989) (holding that, absent an agency or employment relationship, payment by an insurance company in exchange for an expert's testimony at trial was not probative enough to outweigh prejudice); *Wallace v. Leedhanachoke,* 949 S.W.2d 624, 628 (Ky.Ct. App.1996) (holding that absent a "more compelling degree of connection" between an expert and a defendant's insurer, there was no abuse of discretion in ruling evidence of commonality inadmissible); *Davila v. Bodelson,* 103 N.M. 243, 704 P.2d 1119, 1126 (Ct.App. 1985) (stating that "the trial court has a great deal of discretion in deciding when to admit this type of evidence, which requires, even when it falls within one of the exceptions to Evid. Rule 411, a balancing of the probative value against the prejudicial effect and against other considerations listed in Evid. Rule 403"); *Cerasuoli v. Brevetti,* 166 A.D.2d 403, 560 N.Y.S.2d 468, 469–70 (1990) (holding that the court achieved a fair balance between the right to attack credibility and the prejudicial effect of introducing the fact of defendant's insurance coverage by permitting plaintiffs to show a witness's prior medical review services for law firms).

In addition, a division of the Colorado Court of Appeals addressed this issue in a similar case and ruled such evidence admissi-

---

2.  Only one jurisdiction has adopted a per se rule allowing the admission of commonality of insurance evidence. *See Ede v. Atrium S. OB-GYN, Inc.,* 71 Ohio St.3d 124, 642 N.E.2d 365, 369 (1994); *see also Davis v. Immediate Med. Servs.,*

*Inc.,* 80 Ohio St.3d 10, 684 N.E.2d 292, 297 (1997) (extending the holding of *Ede* to an expert witness who was insured by same company as one of the co-defendants).

ble for purposes of showing bias. *See Evans v. Colorado Permanente Med. Group, P.C.*, 902 P.2d 867, 874 (Colo.App.1995), *aff'd in part and rev'd in part on other grounds*, 926 P.2d 1218 (Colo.1996). In *Evans*, the defendant physician introduced the testimony of an expert witness who held a position on the board of directors of a physicians' insurance company. *See id.* at 873. The court of appeals held that "the expert's position on the board of a physicians' insurance company at the time he testified at trial had some tendency to make it more probable that the expert was biased." *Id.* at 874.[3]

After considering the reasoning of other jurisdictions that have considered this issue, we hold that the substantial connection test strikes an appropriate balance between the probative value of evidence of an expert witness's potential bias and the prejudicial effect such evidence could have on a jury.

## IV. Analysis

■ In applying this test to the facts before us, we hold that the evidence presented by Petitioner established a substantial connection between Masterson and the insurance Trust that demonstrated a potential for bias, and that the probative value of such evidence sufficiently outweighed the risk of prejudice to the Respondent. Accordingly, the trial court did not abuse its discretion in admitting evidence that Masterson and Respondent both were insured by the Trust.

In the present case, Petitioner offered evidence of a substantial connection between Respondent's expert witness and the insurance Trust that went beyond commonality of insurance. First, Masterson's relationship with the Trust goes beyond mere membership. Masterson co-founded the Trust in the late 1970s as a response to what he termed a "malpractice insurance crisis." He sat on the original board of directors until 1982. Masterson testified that the Trust was founded to provide "good quality" dentists with affordable insurance and consequently to benefit the public who utilized dentists who were mem-

bers of the Trust. Masterson indicated several times his belief that dentists insured by the Trust were of better quality than average dentists. During cross-examination, Masterson explained why he and other dentists first formed the Trust: "[O]ne of the problems you get into when you're in a dental association is you can't keep dentists that may not be as qualified out of a plan … because that's restraint of trade by the FTC in Washington. So you have to let everyone in if you have a plan." He continued, "[S]o our main purpose was for the [public] so that we could keep good … quality dentists in [the Trust], and keep others that we think weren't as good out…." When asked if he and Respondent were both insured by the Trust, he responded, "Thankfully so, yes."

Second, in addition to this evidence of Masterson's belief that dentists insured by the Trust are of better quality than other dentists, Petitioner's cross-examination also established Masterson's potential bias due to the fact that an adverse judgment could impact him financially. The insurance Trust in this case is distinctive from a common insurance carrier. It is made up of a small (approximately 1500) group of dentists who are screened for quality prior to admittance into the Trust. Money for the payment of malpractice settlements against members is paid out of the Trust and such settlements could result in a rise in premiums charged to all members. In addition, if an adverse verdict could not be satisfied by the reserves of the Trust, all members would be required to absorb a share of the remaining amount.

## V. Conclusion

Thus, we conclude that the trial court did not commit an abuse of discretion when it ruled that Masterson's relationship with the insurance Trust was admissible to show bias. As noted earlier, when reviewing a CRE 403 determination for an abuse of discretion, this court "must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair

3. In the present case, the court of appeals concluded that the result in *Evans* did not dictate admitting evidence of commonality of insurance in this case. However, the cumulative evidence

in this case presents a much more compelling case for bias than the single fact in *Evans* that the expert witness sat on the board of directors of another insurance company.

prejudice to be reasonably expected." *People v. Gibbens,* 905 P.2d 604, 607 (Colo.1995). After reviewing the evidence before the trial court, we conclude that Petitioner established a substantial connection between the insurance Trust and Respondent's expert witness that indicated potential bias on the part of the witness. The trial court weighed the probative nature of this evidence with the potential prejudice and ruled the evidence of bias admissible. Accordingly, we hold that the trial court's ruling did not result in an abuse of discretion. We reverse and remand for further proceedings consistent with this opinion.