Opinion by JUDGE CARPARELLI
*721 ¶ 1 Plaintiffs, William P. and Corinna Settle, appeal the judgment of the trial court in favor of Janet Basinger, M.D., and Rio Grande Citizens Foundation for Health Care, Inc. (Rio Grande Hospital). We affirm.
¶ 2 In this case, we conclude, among other things, that the captain of the ship doctrine does not render an emergency room physician vicariously liable for negligent acts committed in the emergency room by non-hospital employees.
I. Background
¶ 3 In August 2005, Mr. Settle sustained injuries when the ATV he was riding flipped and landed on him. He suffered fractured ribs, a collapsed lung, and a pneumothorax.[1]
¶ 4 Mr. Settle was transported by ambulance to the Rio Grande Hospital emergency room where Dr. Basinger was on duty. There, Dr. Basinger inserted a chest tube to remove air from his chest cavity. She then decided to transfer Mr. Settle to Swedish Medical Center in Denver (Swedish). Swedish arranged for Air Life, an organization independent from the hospitals, to transport him.
¶ 5 According to Dr. Basinger's notes, when the Air Life nurses arrived Mr. Settle was showing some improvement in lung inflation "but [there was] more surrounding blood in [his] chest cavity," and his "breathing was more labored so decided [sic] to sedate and intubate" him. Dr. Basinger inserted another chest tube to try to resolve the pneumothorax.
¶ 6 While Dr. Basinger was placing the chest tube, the Air Life nurses made two unsuccessful attempts to intubate Mr. Settle. Another physician also made an unsuccessful attempt at intubation. That physician and the Air Life nurses eventually inserted a "Combitube" to stabilize Mr. Settle and ensure he had adequate oxygen for the flight. Dr. Basinger then discharged Mr. Settle to the flight crew.
¶ 7 At Swedish, Dr. Warner discovered lacerations in Mr. Settle's posterior trachea and anterior and posterior esophagus, which she attributed to "traumatic intubation presumably from the Combivent tube." The lacerations required multiple surgeries to repair.
II. Procedural History
¶ 8 Plaintiffs filed suit against the physician who attempted to intubate Mr. Settle, Rio Grande Hospital, Air Life, Dr. Basinger, and two Air Life nurses. The complaint alleged that Mr. Settle sustained the tracheal and esophageal lacerations when the Air Life nurses and the physician tried to intubate him. Plaintiffs also alleged that Dr. Basinger "negligently failed to examine, diagnose, observe, treat, and administer the medical care given to Mr. Settle," and that her negligence was a cause of the tracheal and esophageal lacerations.
A. Dr. Basinger's Motion for Summary Judgment and Plaintiffs' Motion to Amend the Complaint
¶ 9 Dr. Basinger sought summary judgment, asserting that she had not attempted the intubation and, therefore, as a matter of law, could not be liable for the injuries to Mr. Settle's trachea and esophagus.
¶ 10 Before the trial court ruled on Dr. Basinger's motion for summary judgment, plaintiffs sought to amend their complaint to add a claim that Mr. Settle's injuries resulted from Dr. Basinger's negligent supervision of the Air Life nurses' intubation efforts.
¶ 11 Plaintiffs' motion also sought to add a claim that Dr. Basinger was "in charge and was vicariously liable under the respond[eat] superior doctrine." Plaintiffs alleged that Dr. Basinger "was the physician in charge of the care and treatment of William Settle"; that Dr. Basinger was "immediately in the area ... while the intubation was in progress"; that the flight nurses were under the supervision of Dr. Basinger while in the emergency room; and that Dr. Basinger was *722 directly and vicariously negligent as the attending physician.
¶ 12 The trial court denied the motion to amend the complaint. It concluded that although Colorado has applied the captain of the ship doctrine to operating room negligence, the doctrine has not been extended beyond the operating room. The court also concluded that negligent supervision does not apply to the facts of this case. The court then granted Dr. Basinger's motion for partial summary judgment, concluding that Dr. Basinger could not be held vicariously liable for the negligent acts of the Air Life nurses.
B. Rio Grande's Summary Judgment Motion
¶ 13 Rio Grande Hospital also sought summary judgment. It argued that, under the corporate practice of medicine doctrine, it could not be liable for the act of an employee who was a licensed physician unless it knew the physician lacked sufficient skills. The trial court granted Rio Grande's motion with regard to plaintiffs' negligent credentialing claim.
C. Trials
¶ 14 The case then went to trial on plaintiffs' negligence claims against the six defendants, including the claim that Dr. Basinger negligently failed to examine, diagnose, observe, treat, and administer the medical care given to Mr. Settle, and that her negligence was a cause of Mr. Settle's tracheal and esophageal lacerations.
¶ 15 The first trial ended in a mistrial. Before the second trial, plaintiffs agreed to dismiss their claims against the Air Life nurses. Plaintiffs also settled with the physician who had attempted to intubate Mr. Settle, leaving Dr. Basinger and Rio Grande Hospital as the remaining defendants.
¶ 16 At the second trial, the jury found Dr. Basinger was negligent, but her negligence did not cause Mr. Settle's injuries.
¶ 17 Plaintiffs now appeal and contend the court erred when it:
• denied the motion to amend the complaint;
• granted Dr. Basinger's and Rio Grande Hospital's motions for summary judgment;
• limited cross-examination of Dr. Basinger and her expert witness, and excluded other impeachment evidence; and
• redacted portions of a witness's deposition, excluded evidence, and allowed defense counsel to vouch for the credibility of a defense witness.
¶ 18 We conclude that the trial court did not err.
III. Plaintiffs' Motion to Amend the Complaint
¶ 19 Plaintiffs contend that the trial court erred when it denied their motion to amend the complaint to add claims against Dr. Basinger for vicarious liability and negligent supervision of the Air Life nurses. We perceive no error.
A. Standard of Review
¶ 20 The decision to grant or deny a motion to amend a complaint is committed to the sound discretion of the trial court and will not be reversed on review without a showing of an abuse of discretion. Polk v. Denver District Court, 849 P.2d 23, 25 (Colo.1993) ; Sterenbuch v. Goss , 266 P.3d 428, 440 (Colo.App.2011). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. People v. Stewart , 55 P.3d 107, 122 (Colo.2002) ; E-470 Pub. Highway Auth. v. Revenig, 140 P.3d 227, 230 (Colo.App.2006).
¶ 21 A trial court may properly deny a motion to amend a complaint where amendment would be futile. Cody Park Property Owners' Ass'n v. Harder, 251 P.3d 1, 5 (Colo.App.2009). An amendment is futile if it would not withstand a motion to dismiss. Id . (citing Bristol Co. v. Osman, 190 P.3d 752, 759 (Colo.App.2007) ).
B. Direct Liability for Negligent Supervision
¶ 22 Plaintiffs argue that the trial court erred when it denied their motion to add a claim for negligent supervision of the Air Life nurses. We disagree.
*723 ¶ 23 To prove negligent supervision, a plaintiff must prove (1) the defendant owed the plaintiff a legal duty to supervise others; (2) the defendant breached that duty; and (3) the breach of the duty caused the harm that resulted in damages to the plaintiff. Keller v. Koca, 111 P.3d 445, 447 (Colo.2005).
1. Duty to Supervise
¶ 24 "Whether a particular defendant owes a legal duty to a particular plaintiff, as well as the scope of the duty, are questions of law for [the] court to resolve." Bath Excavating & Constr. Co. v.Wills, 847 P.2d 1141, 1147 (Colo.1993).
¶ 25 To determine whether a defendant has a legal duty, courts consider the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor. Id.
¶ 26 The duty to supervise an agent or employee arises when the principal or employer "has reason to know " that the agent or employee "is likely to harm others" because of "his [or her] qualities " and "the work or instrumentalities entrusted to him [or her]." Destefano v. Grabrian, 763 P.2d 275, 287 (Colo.1988) (emphasis added) (quoting Restatement (Second) of Agency § 213 cmt. d (1958) (Restatement)). Thus, there is no liability for breach of the duty to supervise unless the principal or employer both knows the agent or employee is not "incompetent, vicious, or careless," and does not take "the care which a prudent [person] would take in selecting the person for the business in hand." Id. (quoting Restatement § 213 cmt. d); accord Keller, 111 P.3d at 448 (duty breached where "employer knows or should have known that the employee would cause harm"); Moses v. Diocese of Colorado, 863 P.2d 310, 327 (Colo.1993) (breach of the duty of care not to recognize "potential employee's 'attribute[s] of character or prior conduct' which would create an undue risk of harm to those with whom the employee came in contact in executing his employment responsibilities" (quoting Connes v. Molalla Transp. Sys., Inc., 831 P.2d 1316, 1321 (Colo.1992) )).
2. Analysis and Conclusions
¶ 27 The trial court did not abuse its discretion when it denied plaintiffs' motion to add a claim for negligent supervision because the claim would not have survived a motion to dismiss.
¶ 28 Negligent supervision is a direct tort. See Keller, 111 P.3d at 448. That is, it must be shown that the defendant had a duty and personally breached that duty, not merely that the agent or employee had and breached a duty, for which the principal or employer is vicariously liable. Id.
¶ 29 Plaintiffs did not allege that the nurses, because of their personal qualities, were likely to harm others in view of the work or instrumentalities entrusted to them. They did not allege that Dr. Basinger hired, employed, requested, or knew the Air Life nurses before they arrived such that she would have had an "antecedent ability" to recognize the Air Life nurses' alleged "attribute[s] of character or prior conduct which would create an undue risk of harm" to Mr. Settle. Moses, 863 P.2d at 327. Nor did plaintiffs allege that Dr. Basinger knew or should have known that, because of their personal attributes, the nurses who attempted the intubation posed a risk of harm to Mr. Settle when they did so. See Keller, 111 P.3d at 448. Thus, plaintiffs alleged no facts upon which the court could have concluded that Dr. Basinger owed them a duty to supervise the Air Life nurses when they attempted the intubation. Therefore, the trial court did not abuse its discretion when it denied plaintiffs' motion to amend their complaint to include a claim for negligent supervision against Dr. Basinger.
C. Plaintiffs' Motion to Add Vicarious Liability Claim
¶ 30 Plaintiffs also contend that the trial court erred when it denied their motion to add a claim of vicarious liability based on the captain of the ship doctrine. We conclude that the court did not err.
*724 ¶ 31 Although plaintiffs do not argue that the master-servant or borrowed servant doctrines apply to the facts of this case, we briefly describe these doctrines to provide context for our analysis of the captain of the ship doctrine, which plaintiffs have argued.
1. Master-Servant
¶ 32 Under the master-servant doctrine, an employer or principal may be liable for the negligence of an employee or agent who acted within the scope of his or her employment or agency. For this doctrine to apply, the employer or principal must have the power and right to control the employee's or agent's actions within the scope of the employment or agency. See Raleigh v. Performance Plumbing & Heating, 130 P.3d 1011, 1019 (Colo.2006) ; Grease Monkey Int'l, Inc. v. Montoya, 904 P.2d 468, 472-73 (Colo.1995) ; Daly v. Aspen Ctr. for Women's Health, Inc., 134 P.3d 450, 452 (Colo.App.2005).
2. Borrowed Servant
¶ 33 Another rationale for vicarious liability is the borrowed servant doctrine. Under this doctrine, a person or entity may be liable for negligent acts committed by someone employed by another person or entity. See Kiefer Concrete, Inc. v. Hoffman, 193 Colo. 15, 18, 562 P.2d 745, 746 (1977) ; Restatement § 227. For this doctrine to apply, the person or entity must have the employer's consent to supervise and control the employee and be in a position to do so. Restatement § 227. In such circumstances, the employee is a "borrowed servant" and the "borrowing" person or entity may be liable for the employee's negligence. Kiefer Concrete, 193 Colo. at 18, 562 P.2d at 746.
3. Captain of the Ship
¶ 34 The captain of the ship doctrine, which is at issue here, refers to an analogy between the authority of a surgeon in an operating room and that of a ship captain at sea. The Pennsylvania Supreme Court first used the analogy in 1949. See McConnell v. Williams, 361 Pa. 355, 65 A.2d 243, 245 (1949). Since then, some courts have adopted the analogy as a doctrine under which a surgeon becomes vicariously liable for the negligence of a hospital employee in the operating room during surgery.
¶ 35 In McConnell, the Pennsylvania court concluded that a surgeon was vicariously liable for the negligent act of an intern employed by the hospital. Applying established principles of agency, the court determined that the surgeon was vicariously liable for the intern's negligent act. The court explained that, "until the surgeon leaves the room at the conclusion of the operation ... he is in ... complete charge of those who are present and assisting him." McConnell, 65 A.2d at 246. In so concluding, the court compared the authority of the surgeon to that of a ship captain.
¶ 36 Beadles v. Metayka, 135 Colo. 366, 311 P.2d 711 (1957), is often cited to support the application of the captain of the ship doctrine in Colorado. In Beadles, the supreme court affirmed the jury's verdict based on a surgeon's own negligence, not on his vicarious liability for the negligence of another. Nonetheless, the court also concluded that the trial court had not erred when it gave a "captain of the ship" instruction.
¶ 37 More than twenty years passed before the supreme court again referred to the captain of the ship doctrine in Adams v. Leidholt, 195 Colo. 450, 453, 579 P.2d 618, 619-20 (1978). There, the supreme court distinguished the facts from those in Beadle, and concluded that the doctrine did not apply. Id . The court noted that the injury occurred long after the surgery was successfully completed, and the employees who caused the injury "were selected, hired, paid, controlled, and supervised by the hospital." Id . at 453, 579 P.2d at 620. The court observed that "although [the surgeon] was generally in charge of [the patient's] post-operative care, ... he had no control of which particular hospital employees would carry out his post-operative orders."Id.
¶ 38 The supreme court also referred to the captain of the ship doctrine in Carpenter v. Young, 773 P.2d 561, 563 (Colo.1989),[2] and *725 USAA v. Parker, 200 P.3d 350, 360 (Colo.2009), but it did not resolve either case on that basis.
¶ 39 The captain of the ship doctrine has also been applied by divisions of this court. However, in all but one case, the divisions have applied the doctrine only with regard to surgeons' liability for the acts of hospital employees assisting in the operating room. See Ochoa v. Vered, 212 P.3d 963, 966 (Colo.App.2009) (captain of the ship doctrine applies when the surgeon assumes supervision and direction of the operating room); Krane v. Saint Anthony Hosp. Systems, 738 P.2d 75, 76 (Colo.App.1987) ("[o]nce the operating surgeon assumes control in the operating room, the surgeon is liable for the negligence of all persons working under the surgeon's supervision"); Kitto v. Gilbert, 39 Colo.App. 374, 382-83, 570 P.2d 544, 550 (1977) (surgeon liable for acts of anesthetist chosen by the surgeon and for hospital personnel assisting in operating room).
¶ 40 The only Colorado case in which the physician was found vicariously liable for the acts of a non-hospital employee was O'Connell v. Biomet, Inc., 250 P.3d 1278, 1283 (Colo.App.2010). Even there, however, the division applied the doctrine with regard to a surgeon's liability for another's negligence during surgery in an operating room. Although the negligent person was not a hospital employee, he was present in the operating room at the surgeon's request and authorization to act as an advisor during the surgery.
¶ 41 The captain of the ship doctrine is not universally accepted, and many state courts have limited its application. A growing majority of state courts has criticized the doctrine as outmoded, and has declined to apply it to hold physicians liable for the negligence of others in any setting. See, e.g., Tappe v. IowaMethodist Med. Ctr., 477 N.W.2d 396, 403 (Iowa 1991) ; Sesselman v. Muhlenberg Hosp. , 124 N.J.Super. 285, 290, 306 A.2d 474, 476 (N.J.Super.Ct.App.Div.1973) ; Baird v. Sickler , 69 Ohio St.2d 652, 654, 433 N.E.2d 593, 595 (1982) ; Thomas v. Raleigh Gen. Hosp ., 178 W.Va. 138, 141, 358 S.E.2d 222, 225 (1987) ; Lewis v. Physicians Ins. Co. , 243 Wis.2d 648, 666, 627 N.W.2d 484, 494 (Wis.2001).
4. Analysis and Conclusions
¶ 42 We reject plaintiffs' contention that there was a genuine issue of fact regarding Dr. Basinger's liability under the captain of the ship doctrine. Plaintiffs cite no case in which a court applied this doctrine to an emergency room physician, nor have we found one.
¶ 43 Plaintiffs' vicarious liability claim alleged that Mr. Settle was injured in an emergency room-not an operating room-as a result of the negligence of nurses who were not employees of the hospital. Neither Rio Grande Hospital nor Dr. Basinger knew the nurses or knew whether they had any attributes of character or prior conduct that would create an undue risk of harm to Mr. Settle. Swedish arranged the air transportation and chose Air Life. Air Life had its own protocols. Air Life chose the nurses who were assigned to stabilize and transport Mr. Settle. They were acting under the license of a physician employed by Air Life.
¶ 44 We decline to extend the captain of the ship vicarious liability doctrine to the circumstances of this case. The nurses were acting under the license and supervision of a doctor employed by Air Life rather than Dr. Basinger or Rio Grande Hospital. They were not hospital employees and the defendant did not select them for the task. Moreover, no Colorado appellate court has applied the captain of the ship doctrine to render a non-surgeon vicariously liable for the negligence of another providing medical care outside an operating room.
¶ 45 Accordingly, we conclude that the trial court did not abuse its discretion when it denied plaintiffs' motion to amend the complaint to add a claim of vicarious liability based on the captain of the ship doctrine.
*726 IV. Dr. Basinger's Motion for Summary Judgment
¶ 46 Plaintiffs contend that the trial court erred when it granted summary judgment in favor of Dr. Basinger on their claim that Dr. Basinger caused the tracheal and esophageal lacerations when she "negligently failed to examine, diagnose, observe, treat, and administer the medical care given to Mr. Settle." We perceive no error.
A. Trial Court Proceedings
¶ 47 In her motion for summary judgment, Dr. Basinger argued that she was not negligent because she did not perform the intubation alleged to have caused Mr. Settle's injuries.
¶ 48 In response to the motion, plaintiffs argued that Dr. Basinger "was the physician in charge of the care and treatment of William Settle"; that Dr. Basinger was "immediately in the area ... while the intubation was in progress"; that the nurses were under the supervision of Dr. Basinger while in the emergency department; that Dr. Basinger acted negligently; and that she was vicariously liable as the attending physician.
¶ 49 In support of their argument, plaintiffs proffered
• copies of Mr. Settle's medical record showing that Dr. Basinger was the attending physician;
• Dr. Basinger's deposition testimony stating that she was in charge of the emergency room on the day in question;
• the flight nurses' written admissions that "the physician who was present is in charge of the patient's care";
• the testimony of Air Life's assistant director and chief flight nurse that, when a physician is present, the physician provides the highest level of care and the flight nurses are assisting the physician; and
• the affidavit of a general surgeon testifying to the standard of care.
¶ 50 The trial court entered summary judgment in favor of Dr. Basinger because it concluded, as a matter of law, that Dr. Basinger could not be vicariously liable for the nurses' alleged negligence.
B. Standard of Review
¶ 51 We review the grant of summary judgment de novo. West Elk Ranch, L.L.C. v. United States, 65 P.3d 479, 481 (Colo.2002). Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c) ; Martini v. Smith, 42 P.3d 629, 632 (Colo.2002). "The nonmoving party is entitled to the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." West Elk Ranch, 65 P.3d at 481.
¶ 52 Arguments and allegations alone are not sufficient to create a genuine issue of material fact. Instead, the party opposing summary judgment must set forth by affidavit, or otherwise, specific facts that demonstrate a genuine issue of fact. People in Interest of A.C., 170 P.3d 844, 846 (Colo.App.2007).
¶ 53 The existence and scope of a defendant's legal duty to a plaintiff are questions of law for a court to resolve. Bath Excavating & Constr. Co., 847 P.2d at 1147.
C. Analysis and Conclusions
¶ 54 To prove a negligence claim, a plaintiff must show that (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach of duty caused the harm resulting in the damages alleged. Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 929 (Colo.1997).
¶ 55 It is undisputed that Dr. Basinger owed a duty of care to Mr. Settle. However, plaintiffs proffered no evidence that the medical procedures administered by Dr. Basinger caused Mr. Settle's tracheal and esophageal injuries. Rather, plaintiffs' opposition to the motion relied solely on the negligence of the nurses and Dr. Basinger's alleged vicarious liability for their negligence. We reject plaintiffs' argument for the reasons explained above. In addition, because *727 plaintiffs proffered no evidence that medical procedures Dr. Basinger administered were negligent and caused the tracheal and esophageal lacerations, they could not establish the causation element of their direct negligence claim against Dr. Basinger. Therefore, we conclude the trial court did not err when it granted summary judgment in favor of Dr. Basinger on this claim.
V. Rio Grande Hospital's Motion for Summary Judgment
¶ 56 Plaintiffs contend that the trial court erred when it granted summary judgment in favor of Rio Grande Hospital on their negligent credentialing claim. Specifically, plaintiffs allege that Rio Grande Hospital failed to monitor Dr. Basinger properly, that the hospital disregarded its own requirements for credentialing, and that the hospital was therefore liable for negligently extending hospital privileges to Dr. Basinger. Again, we perceive no error.
A. Negligent Credentialing
¶ 57 Hospitals have a duty to supervise the competence of their medical staffs. Braden v. Saint Francis Hosp., 714 P.2d 505, 507 (Colo.App.1985) ; see Rosane v. Senger, 112 Colo. 363, 366, 149 P.2d 372, 374 (1944) ; Camacho v. Mennonite Bd. of Missions, 703 P.2d 598, 600 (Colo.App.1985) (a hospital may be liable for negligently supervising and reviewing the performance of the members of its medical staff). "In extending staff privileges to a doctor, a hospital does not generally expose itself to liability for the doctor's negligence unless it knows or should know of a propensity on the doctor's part to commit negligent acts." Braden, 714 P.2d at 507 (quoting Western Insurance Co. v. Brochner, 682 P.2d 1213, 1215 (Colo.App.1983), rev'd, 724 P.2d 1293 (Colo.1986) ).
¶ 58 To recover damages for negligent credentialing, a plaintiff must prove that
(1) the hospital had a legal duty to conform to a certain standard of conduct;
(2) the hospital breached that duty;
(3) the plaintiff was injured; and
(4) there was a causal connection between the hospital's alleged negligent conduct and the resulting injury.
See Camacho, 703 P.2d at 599-600.
B. Analysis and Conclusions
¶ 59 Plaintiffs argue that Dr. Basinger's 2002 application for hospital privileges at Rio Grande Hospital was incomplete and that Rio Grande Hospital did not verify Dr. Basinger's credentials before extending her hospital privileges. Among other things, plaintiffs argue that Dr. Basinger's application for hospital privileges did not disclose that she had not completed her residency or that she suffered from a medical condition that affected her ability to practice medicine.
¶ 60 We have concluded that the trial court did not err when it granted summary judgment in favor of Dr. Basinger and Rio Grande Hospital on plaintiffs' negligent supervision claim. As a result, none of plaintiffs' claims alleging Dr. Basinger was directly negligent survived. In addition, we have concluded that the captain of the ship doctrine does not render Dr. Basinger vicariously liable for the alleged negligence of the Air Life nurses. Consequently, we must also conclude that the record does not contain sufficient evidence to establish a genuine issue that there was a causal connection between the hospital's alleged negligent credentialing, the nurses' alleged negligent intubation, and Dr. Basinger's alleged failure to exercise control and supervision over the Air Life nurses as they intubated Mr. Settle. Thus, the court did not err when it granted summary judgment in favor of Rio Grande Hospital on the negligent credentialing claim.
VI. Admission of Evidence for Impeachment
¶ 61 Plaintiffs contend that the court erred when it limited crossexamination of Dr. Basinger and her expert witness and excluded other impeachment evidence. We are not persuaded.
*728 A. Law
1. Relevance
¶ 62 All relevant evidence is admissible unless otherwise excluded by constitution, statute, or rule. CRE 402. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401.
¶ 63 If evidence is logically relevant to a matter of consequence, the court must determine whether, under CRE 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. People v. Summitt, 132 P.3d 320, 324 (Colo.2006) ; Quigley v. Jobe, 851 P.2d 236, 238 (Colo.App.1992). In reaching its decision, the trial court must determine whether and how the evidence at issue is relevant to the case and, if so, to what extent its probative value might be outweighed by any unfair prejudice to the other party. People v. Welsh, 80 P.3d 296, 304 (Colo.2003) ; Arnold v. Colorado State Hosp., 910 P.2d 104, 108 (Colo.App.1995).
¶ 64 The trial court has considerable discretion to determine the relevance, admissibility, probative value, and prejudicial impact of evidence. People v. Melillo, 25 P.3d 769, 773 (Colo.2001) ; People v. Ibarra , 849 P.2d 33, 38 (Colo.1993) ; Quigley, 851 P.2d at 238. When reviewing the trial court's determinations, we afford the evidence its maximum probative weight and its minimum prejudice. See Bonser v.Shainholtz , 3 P.3d 422, 424 (Colo.2000). We review a trial court's evidentiary ruling for an abuse of discretion. Id.
2. Cross-Examination
¶ 65 Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. CRE 611(b). Pursuant to CRE 404(a)(3), evidence of a person's character is not admissible to prove that the person acted in conformity with that trait on a particular occasion, except as provided in CRE 607 (impeachment) and 608 (opinion or reputation), and section 13-90-101, C.R.S.2012 (felony conviction). CRE 404(a)(3).
¶ 66 Under CRE 608, the credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but the evidence may only relate to the witness's character for truthfulness or untruthfulness. At the discretion of the court, a party may ask a witness about specific instances of conduct that are probative of the witness's character for truthfulness. CRE 608(b).
B. Impeachment of Dr. Basinger
¶ 67 Plaintiffs contend that the trial court erred when it limited their cross-examination of Dr. Basinger and prevented them from introducing documents related to Dr. Basinger's credibility and credentials to testify as an expert. We perceive no error.
1. Motions in Limine
¶ 68 Defendants designated Dr. Basinger as an expert witness regarding the standard of care and her own compliance with that standard. They filed pretrial motions to limit evidence about Dr. Basinger's personal medical history and her disciplinary history.
¶ 69 With regard to the Dr. Basinger's disciplinary history, defendants did not seek to limit evidence about her failure to complete her residency requirements. Rather, defendants admitted that Dr. Basinger's license to practice medicine in Colorado had two restrictions. She could not practice more than forty hours per week and her practice of obstetrics was limited. However, defendants argued that, because plaintiffs' claims did not assert violations of either of these restrictions, the existence of these restrictions was irrelevant.
¶ 70 Defendants also sought to exclude evidence that Dr. Basinger's medical license had been in probationary status and that she had a practice monitor. Defendants argued that this was not probative of the quality of the care Dr. Basinger provided to Mr. Settle.
¶ 71 Plaintiffs responded that the information about Dr. Basinger's failure to complete a residency and her disciplinary history was probative of Dr. Basinger's qualifications as *729 an expert witness regarding the standard of care. They also argued that her physical and mental health was probative of her ability to perform in a hospital setting.
2. Trial Court's Pretrial Orders
¶ 72 The trial court observed that Dr. Basinger stipulated that she did not complete her residency because of a medical condition. The court ruled that plaintiffs would be permitted to ask about the two limitations on Dr. Basinger's Colorado license, including the practice monitor requirement. However, the court did not permit plaintiffs to ask about the reasons her practice was limited or seek other such information absent proper foundation and an in camera hearing.
¶ 73 In a later pretrial order, the court excluded documents related to a Family Medical Leave Act leave of absence that Dr. Basinger took five years after she had treated Mr. Settle. Citing CRE 402, the court ruled that Dr. Basinger's leave of absence had "limited relevance to the issues in this case and [to] the credibility of [Dr. Basinger as an] expert." The court said that Dr. Basinger's leave of absence five years after she treated Mr. Settle was not evidence of her professional competence and would not help the trier of fact determine whether Dr. Basinger breached the standard of care in her treatment.
¶ 74 Nonetheless, the court ruled that the leave of absence was relevant to Dr. Basinger's qualifications as an expert witness. Accordingly, the court ruled that plaintiffs could elicit the fact that Dr. Basinger did not practice medicine at Rio Grande Hospital from November 2010 through February 2011. Once again, however, the court ruled that plaintiffs could not ask about the circumstances related to the leave because the probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
3. Trial
¶ 75 At trial, plaintiffs asked the court to permit them to question Dr. Basinger about
• her application for hospital privileges, which did not disclose information about her mental and physical condition and her failure to complete her residency; and
• her failure to disclose the opinion of the chair of her residency program.
¶ 76 The court referred to its earlier orders excluding the proffered evidence, saying that it had "tried to give a clear outline to both sides as to where each side could go on those issues" and plaintiffs "didn't actually even go to the limits of what [the court] had permitted" in their examination of Dr. Basinger.
¶ 77 The court admitted evidence that Dr. Basinger had not completed a family practice residency, that she had a stipulation on her Colorado license, and that she had taken a leave of absence from Rio Grande Hospital. The court excluded evidence of her medical history, the circumstances related to the surrender of her Pennsylvania license, and alleged misrepresentations on her application for hospital privileges.
4. Analysis and Conclusions
¶ 78 The excluded evidence about Dr. Basinger's medical history, the circumstances of the surrender of her Pennsylvania license, and the alleged failure to disclose information in her application for hospital privileges relate to Dr. Basinger's qualifications and credibility. Such evidence might properly undermine the reliability of her testimony about the standard of care and her adherence to it. The jury, however, found that Dr. Basinger had acted negligently. Therefore, Dr. Basinger's testimony was neither persuasive nor determinative regarding her negligence.
¶ 79 We reject plaintiffs' argument that exclusion of the information prejudiced their ability to prove that Dr. Basinger's negligence was a cause of their damages. Considered in the context of the evidence admitted by the court and the jury's finding of negligence, the additional probative value of the excluded evidence with regard to causation was slight, at best.
¶ 80 Accordingly, we conclude that the trial court's exclusion of the evidence was not manifestly arbitrary, unreasonable, or unfair, and that there was no prejudicial error.
*730 Consequently, we also conclude that the court did not abuse its discretion when it granted the pretrial motions.
C. Impeachment of Defendants' Expert Witness
¶ 81 Plaintiffs contend that the court erred when it did not allow them to "inquire into the fact" that another of defendants' expert witnesses had been found guilty of unprofessional conduct in violation of the Colorado Medical Practice Act. We disagree.
¶ 82 Defendants' expert witness was a physician who had been convicted of driving while intoxicated and later disciplined by the Board of Medical Examiners. The witness admitted that her conviction violated the Medical Practice Act. However, plaintiffs wanted to question her about the underlying circumstances. They argued that the witness underwent an extended period of treatment for addiction, had a relapse, and underwent additional treatment for alcohol and narcotics dependence. They argued that this evidence was probative of her credibility.
¶ 83 In its order precluding inquiry into the witness's disciplinary record, the court observed that plaintiffs did not contend that the witness was not an expert or qualified to express opinions in the area for which she had been endorsed under CRE 702.
¶ 84 The court ruled that "the fact that the doctor was placed on probationary status is relevant to the jury's understanding of her credentials and experience, but ... it is not appropriate to allow exploration of the specific reasons since they are unrelated to the specific subject of the testimony of this case." The court's order permitted plaintiffs to "inquire on cross-examination whether [the witness's] license has been subject to restrictions at any time[,] including whether it is true that she had probationary status for a period of five years as a result of personal conduct not involving standard of care issues."
¶¶ 85 We conclude that the court did not abuse its discretion. Evidence of the witness's abuse of alcohol and, perhaps, narcotics, might be probative of the quality of care she provided to patients during the period of her addiction, but that was not at issue here. Although such evidence might also be probative of her character for sobriety and obedience of the law, it would be impermissible evidence of a trait of character, contrary to CRE 404(a)(3). Under CRE 608, evidence of a witness's character for truthfulness may be presented only in the form of an opinion or reputation, and plaintiffs were not seeking to present either. Whether to permit a party to cross-examine a witness about specific conduct probative of a witness's truthfulness is within the sound discretion of the court. CRE 608(b).
¶ 86 We conclude that testimony about the witness's addiction to alcohol or narcotics was not admissible for any proper purpose. Accordingly, the court did not abuse its discretion.
VII. Redaction of Deposition and Other Alleged Errors
¶ 87 Plaintiffs contend that the court erred when it (1) excluded portions of a witness's deposition to remove references to insurance; (2) excluded evidence of a letter from plaintiffs' counsel to the witness saying it was permissible for her to meet with defense counsel; and (3) allowed defense counsel to vouch for the credibility of a defense witness. We disagree.
A. Redaction of Deposition
¶ 88 Plaintiffs contend that the trial court erred when it excluded deposition testimony that
• the witness was represented by an attorney appointed by her malpractice insurance company, when the same insurance company also represented one of the defendants;
• the attorney representing the witness specialized in advising doctors on how to testify in malpractice cases;
• the witness would lose her hospital privileges if she lost her malpractice insurance; and
• defendants falsely asserted the witness was their consultant as a means of gaining access to her.
*731 ¶ 89 Plaintiffs assert that "the insurance company's interest in the outcome of the case was of significance here because an otherwise apparently independent witness was actually being advised by a defense attorney who was hired by an insurance company with a direct financial interest in the outcome of the case."
¶ 90 Plaintiffs also argue that after the defense attorney met with the witness, without plaintiffs' counsel present, the witness changed her testimony, and plaintiffs should have been allowed to question her as to what occurred to demonstrate "there was significant hidden bias and prejudices that could have influenced the [witness] to change her story."
¶ 91 Plaintiffs suggest that the witness's testimony was biased because she was concerned that the insurance company would drop her insurance coverage if her testimony were favorable to plaintiffs.
1. CRE 411
¶ 92 Evidence of a party's liability insurance is generally not relevant, and is not admissible to prove whether a party acted negligently. CRE 411, see Prudential Property & Casualty Insurance Co. v. Distr. Court, 617 P.2d 556, 559 (Colo.1980) ; Jacobs v. Commonwealth Highland Theatres, Inc., 738 P.2d 6, 12 (Colo.App.1986). However, evidence of liability insurance may be admissible when offered for another purpose such as to prove agency, ownership, or control, or bias or prejudice of a witness. CRE 411.
¶ 93 The trial court may exclude evidence relevant to an issue such as bias, however, if it determines that the danger of unfair prejudice substantially outweighs the probative value of the evidence. See CRE 403 ; Bonser, 3 P.3d at 424 (relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice).
¶ 94 A witness must have "a sufficient degree of 'connection' with the liability insurance carrier to justify allowing proof of this relationship as a means of attacking the credibility of the witness." Bonser, 3 P.3d at 425 (quoting Otwell v. Bryant, 497 So.2d 111, 115 (Ala.1986) ). The substantial connection may be established by showing an expert witness's economic relationship with a specific insurer, but requires more than payment in exchange for testimony. Garcia v. Mekonnen, 156 P.3d 1171, 1173 (Colo.App.2006). The requisite strength of connection would include "ownership, agency, or employment." Id . at 1175 (quoting Mills v. Grotheer, 957 P.2d 540, 543 (Okla.1998) ). Under the "substantial connection analysis," the court must balance the probative value and potential prejudice on the facts of each case. Bonser, 3 P.3d at 425 (finding substantial connection where witness had co-founded the insurance trust and had a financial stake in it).
2. Analysis and Conclusions
¶ 95 The only connection that plaintiffs allege between the witness and the insurance carrier is that the same insurance carrier insured both the witness and defendants. Plaintiffs do not allege "ownership, agency, or employment." See Garcia, 156 P.3d at 1175. The inferences plaintiffs sought to prove were both attenuated and impermissible. Without more, the jury could only speculate that the insurance company could and might retaliate against the witness based on her testimony. The more direct result of the questioning would be to impermissibly disclose the existence of insurance coverage, and thereby bias the jury toward a finding of liability and a larger award. Plaintiffs' theory of relevance would not establish the substantial connection necessary to allow admission of the evidence of insurance in order to attack the witness's credibility. See Bonser, 3 P.3d at 425. Accordingly, trial court did not abuse its discretion.
B. Excluded Letter
¶ 96 Plaintiffs assert that the court erred when it did not permit them to introduce a letter they had sent to a witness who testified via a deposition video recording. We disagree.
¶ 97 A video of the witness's deposition was played at trial. In the deposition, the witness testified that plaintiffs' counsel called her two hours before a scheduled meeting with defense counsel and told her not to meet *732 with them and that, as a result, she cancelled the meeting. Plaintiffs' counsel disputed the witness's assertion and argued that he had sent her a letter in which he told her she could meet with opposing counsel. He did not, however, question the witness about the telephone call during the deposition, show her the letter, or ask her about the letter.
¶ 98 At trial, plaintiffs attempted to submit the letter into evidence without laying a foundation. The court sustained defendants' objection.
¶ 99 To the extent that plaintiffs sought to impeach the witness's deposition testimony about the telephone call, they did not ask the witness about the letter at the deposition or present it to her at that time. Without having the witness authenticate the letter as one she had received, there was no evidence that she did so. See CRE 901. To the extent plaintiffs were offering the letter to demonstrate that they had not acted improperly, the letter was neither authenticated nor relevant to the witness's credibility or the question of whether defendants were negligent. See id. ; CRE 402.
¶ 100 Accordingly, the court did not abuse its discretion when it did not permit plaintiffs to use the letter as evidence.
C. Improper Vouching
¶ 101 Plaintiffs contend that, in closing argument, defense counsel improperly vouched for the defense expert's credibility. We perceive no error.
¶ 102 In closing argument, defense counsel said:
Dr. Warner is a highly respected pulmonologist. She's a very competent person. I doubt a bunch of lawyers could change her opinion; and as she said, they did not. I think she's a credible person with integrity.
Plaintiffs objected to the statement as "expressing an opinion," and the court sustained the objection. Plaintiffs requested no further relief or limiting instruction. The trial court provided the relief plaintiffs requested. Therefore, we perceive no error.
¶ 103 The judgment is affirmed.
JUDGE WEBB and JUDGE LICHTENSTEIN concur.

Pneumothorax is an abnormal collection of air or gas in the space that separates the lung from the chest wall.

A division of this court held that there was a factual question as to when the surgeon assumed supervision of the operating room, and that the captain of the ship issue should have been submitted to the jury. Young v. Carpenter, 694 P.2d 861, 864 (Colo.App.1984). Another division of this court reversed the summary judgment entered on remand, Young v. Carpenter, 757 P.2d 148 (Colo.App.1988), and the supreme court ultimately decided the case on other grounds.