GLADYS VASQUEZ *v.* PATRICK M. ROCCO ET AL.
(SC 16981)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

Argued September 8—officially released December 23, 2003

*Gary J. Strickland,* with whom, on the brief, was *Vincent M. DeAngelo,* for the appellant (plaintiff).

*Herbert J. Shepardson,* with whom, on the brief, was *Lorinda S. Coon,* for the appellees (defendants).

*Opinion*

PALMER, J. The plaintiff, Gladys Vasquez, commenced this medical malpractice action against the named defendant, Patrick M. Rocco,[1] a surgeon, alleging that he negligently had severed her bile duct while performing laparoscopic surgery to remove her gallbladder. The jury returned a verdict for the defendant, and the trial court rendered judgment thereon. The plaintiff appealed,[2] claiming that the trial court improperly had precluded her from cross-examining one of the defendant's expert witnesses about his relationship to the defendant's malpractice insurance carrier. Although we agree with the plaintiff that she was entitled to question the defendant's expert witness about his relationship to the defendant's malpractice insurer, we conclude that the plaintiff has failed to provide this court with a record adequate to determine whether the trial court's contrary ruling was harmful. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In June, 1997, the defendant surgically removed the plaintiff's gallbladder, a procedure known as a cholecystectomy. Stedman's Medical Dictionary (27th Ed. 2000) p. 337. The defendant performed the cholecystectomy laparoscopically by inserting a special camera and certain surgical instruments into small incisions in the plaintiff's abdomen. Several days after the surgery, the plaintiff was jaundiced and suffering from considerable pain. After being readmitted to

---

[1] Rocco's employer, New Britain Surgical Group, Inc., also is a defendant. For ease of reference, we refer to Rocco as the defendant.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

the hospital, it was discovered that the plaintiff's common bile duct had been severed during the cholecystectomy. The plaintiff subsequently underwent another surgery to repair the severed bile duct.

The plaintiff thereafter brought this action, claiming that the defendant negligently severed her bile duct in performing the cholecystectomy. The defendant admitted that he inadvertently severed the plaintiff's bile duct while performing the surgery but claimed that he had not been negligent in doing so. Consequently, on the question of negligence, the sole issue for the jury was whether the defendant had adhered to the standard of care when, in the course of performing the cholecystectomy, he had severed the plaintiff's bile duct. The plaintiff adduced expert testimony from two physicians, Irvin Modlin and Richard Cohen, that the defendant's negligence was the cause of the severed bile duct. The defendant likewise adduced expert testimony from two physicians, Robert Lincer and Michael Tortora, each of whom testified that the defendant's surgical performance had been within the standard of care required of surgeons who remove gallbladders laparoscopically and that the severing of the bile duct is a risk inherent in such a procedure.

With respect to Lincer's testimony, the plaintiff sought to cross-examine him about his relationship with the defendant's malpractice insurance carrier, Connecticut Medical Insurance Company (Connecticut Medical), a mutual insurance company that is owned by its policyholders. Specifically, the plaintiff sought to elicit that: Lincer, himself, was insured by Connecticut Medical;[3] he had been insured by Connecticut Medical for twelve years; he had served on Connecticut Medical's

---

[3] The record indicates that approximately 60 percent of physicians licensed to practice medicine or surgery in this state are insured by Connecticut Medical.

business development committee for two years; and he recently had been appointed to serve on Connecticut Medical's board of directors.[4] The plaintiff maintained that she was entitled to have the jury apprised of Lincer's relationship with Connecticut Medical to demonstrate Lincer's alleged interest in the outcome of the case.

The trial court rejected the plaintiff's claim and barred her from adducing evidence regarding Lincer's relationship with Connecticut Medical. The court concluded that such evidence would create a "collateral or . . . side issue not germane to the central issues of [the] case," and that it "would take considerable time to hear" that collateral or side issue. The court further concluded that the prejudice to the defendant arising from the fact that he carried liability insurance outweighed any probative value that the evidence might have had regarding Lincer's potential interest in the outcome of the case. At the conclusion of the trial, the jury returned a verdict for the defendant.

On appeal, the plaintiff maintains that the trial court improperly declined to permit her to cross-examine Lincer about his relationship with Connecticut Medical. In particular, she claims that she was entitled to elicit testimony from Lincer regarding that relationship because the defendant and Lincer both are insured by Connecticut Medical. Alternatively, the plaintiff contends that she should have been allowed to question Lincer about his ties to Connecticut Medical because

---

[4] On voir dire examination, outside the presence of the jury, Lincer testified that he had not yet attended his first Connecticut Medical board meeting and, therefore, was not certain whether he officially was a board member as of the time of trial. Lincer also testified, however, that he was planning to attend his first board meeting within one week thereafter. With respect to his participation as a member of Connecticut Medical's business development committee, Lincer testified that that committee convened approximately four times a year to discuss Connecticut Medical's interests in pursuing other insurance products and ventures.

Lincer had a substantial connection to Connecticut Medical by virtue of his membership in Connecticut Medical's business development committee and his recent appointment to Connecticut Medical's board of directors. The defendant maintains that the trial court properly excluded the evidence regarding Lincer's relationship with Connecticut Medical. Alternatively, the defendant contends that, even if the court incorrectly prohibited the plaintiff from questioning Lincer about his relationship with Connecticut Medical, the plaintiff has failed to furnish an adequate record on appeal for a determination of whether any such impropriety was harmful. Although we agree with the plaintiff that the trial court improperly prohibited her from adducing testimony about the nature of Lincer's relationship with Connecticut Medical, we nevertheless affirm the judgment of the trial court because we also conclude that the record on appeal is inadequate for our determination of the extent to which the plaintiff may have been harmed by the court's improper ruling. We address each of these issues in turn.[5]

The trial court excluded evidence of Lincer's relationship to Connecticut Medical pursuant to § 4-3 of the Connecticut Code of Evidence, which provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." For purposes of § 4-3, "unfair prejudice is that which unduly arouse[s] the jury's emotions of prejudice, hostility or sympathy . . . or tends to have some adverse effect

---

[5] We note that, in light of our conclusion that the record is inadequate for our review of the plaintiff's claim, we are not required to address the first issue, namely, whether the trial court improperly precluded the plaintiff from questioning Lincer about his relationship with Connecticut Medical. We address that issue, however, because of the likelihood that it will arise in future cases.

upon [the party against whom the evidence is offered] beyond tending to prove the fact or issue that justified its admission into evidence." (Citation omitted; internal quotation marks omitted.) *Ancheff* v. *Hartford Hospital*, 260 Conn. 785, 804, 799 A.2d 1067 (2002). "Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 329–30, 746 A.2d 761 (2000).

In evaluating the propriety of the trial court's ruling, our role on appeal is "limited to determining whether the court clearly abused its discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Ancheff* v. *Hartford Hospital*, supra, 260 Conn. 805. Applying these principles, we conclude that the trial court abused its discretion in excluding evidence of Lincer's relationship to Connecticut Medical.

We begin our review of the trial court's ruling by noting that evidence that a defendant carries liability insurance is inadmissible on the issue of the defendant's negligence. Conn. Code Evid. § 4-10 (a). There are two primary reasons for this principle of exclusion. First, evidence of liability insurance generally is not probative of whether the insured acted negligently. E.g., *Walker* v. *New Haven Hotel Co.*, 95 Conn. 231, 235, 111 A. 59 (1920) (evidence that defendant is insured has no "force or weight as evidence of negligence"). Second, the exclusion of evidence of a defendant's insurance coverage "prevents the jury from improperly rendering a decision or award based upon the existence or nonexis-

tence of liability coverage rather than upon the merits of the case." Conn. Code Evid. § 4-10 (a), commentary.

Our rules of evidence do not mandate the exclusion of evidence of liability insurance coverage, however, when it is offered for another purpose, such as to prove the bias or prejudice of a witness. Conn. Code. Evid. § 4-10 (b); see also *Magnon* v. *Glickman*, 185 Conn. 234, 242, 440 A.2d 909 (1981) ("[i]t is usually held that it is permissible for plaintiff's counsel . . . to show the relationship between a witness and defendant's insurance company where such evidence tends to show the interest or bias of the witness and affects the weight to be accorded his testimony" [internal quotation marks omitted]). A concern remains, however, that jurors might be influenced by such evidence because they may believe that an insurance company is better able than the parties to bear any loss resulting from the defendant's alleged negligence. Although today's jurors probably assume that all physicians carry malpractice insurance,[6] "the introduction of evidence on the subject tends to emphasize something that is usually irrelevant and that may have an adverse effect on the quality of the jury's deliberations and conclusions." *Barsema* v. *Susong*, 156 Ariz. 309, 313, 751 P.2d 969 (1988).

Nevertheless, the risk of undue prejudice to the defendant resulting from the introduction of such evidence must be weighed against the plaintiff's right of cross-examination regarding motive, interest, bias or prejudice, a right that may not be unduly restricted. E.g., *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 663, 638 A.2d 6 (1994); see also General Statutes § 52-145 (b) ("[a] person's interest in the outcome of the action . . . may be shown for the purpose of affecting his

---

[6] Indeed, physicians licensed to practice medicine or surgery in Connecticut are statutorily required to obtain malpractice insurance. See General Statutes § 20-11b.

credibility"); Conn. Code Evid. § 6-5 ("[t]he credibility of a witness may be impeached by evidence showing bias for, prejudice against, or interest in any person or matter that might cause the witness to testify falsely"). Furthermore, "[a] basic and proper purpose of cross-examination of an expert is to test that expert's credibility." (Internal quotation marks omitted.) *State* v. *Copas*, supra, 252 Conn. 327.

The majority of courts that have addressed this issue apply a "substantial connection" test to determine whether evidence of an expert witness' relationship to the defendant's insurer is more probative of potential bias than it is prejudicial. "The substantial connection analysis looks to whether a witness has a sufficient degree of *connection* with the liability insurance carrier to justify allowing proof of this relationship as a means of attacking the credibility of the witness." (Emphasis added; internal quotation marks omitted.) *Bonser* v. *Shainholtz*, 3 P.3d 422, 425 (Colo. 2000). Underlying this analysis is the premise that only some relationships between a defendant's expert witness and the defendant's insurance carrier give rise to an inference of bias that outweighs the countervailing risk that jurors might use the evidence for an improper purpose. Thus, when a witness has a substantial connection to the defendant's insurer, such as that of agency, employment or control, evidence of that relationship is considered sufficiently probative of bias that it is admissible despite the risk of prejudice to the defendant. See, e.g., *Barsema* v. *Susong*, supra, 156 Ariz. 314 (trial court improperly excluded evidence that defendant's witness was vice president and member of board of directors of defendant's insurance carrier); *Evans* v. *Colorado Permanente Medical Group, P.C.*, 902 P.2d 867, 874 (Colo. App. 1995) (witness' position on insurer's board of directors sufficiently probative of bias to outweigh danger of unfair prejudice to defendant); *Golden* v. *Kish-*

*waukee Community Health Services*, 269 Ill. App. 3d 37, 44–45, 645 N.E.2d 319 (1994) (trial court improperly excluded evidence that defendant's witness had received significant remuneration from defendant's insurer for services witness had performed for insurer); *Yoho* v. *Thompson*, 345 S.C. 361, 366, 548 S.E.2d 584 (2001) (trial court improperly precluded plaintiff from cross-examining defendant's expert witness about his employment relationship with defendant's insurer); *Lombard* v. *Rohrbaugh*, 262 Va. 484, 495, 551 S.E.2d 349 (2001) (probative value of evidence that witness, although not employee of defendant's insurer, received more than $100,000 per year in payments from that insurer outweighed possible prejudice to defendant).

On the other hand, when the witness is merely a policyholder of the defendant's insurer, the witness is unlikely to be influenced by that relationship and, consequently, the risk of prejudice to the defendant from the admission of such evidence is deemed to outweigh its probative value. Thus, in the absence of any other connection between the witness and the defendant's insurer, evidence that the witness and the defendant are insured by the same carrier is insufficient to justify the admission of that evidence under the "substantial connection" test. See, e.g., *Barsema* v. *Susong*, supra, 156 Ariz. 313 (relevance of evidence that witness and party had common insurance carrier generally too attenuated on issue of bias to be admissible); *Shamblin* v. *Albright*, 278 Ark. 565, 567, 647 S.W.2d 470 (1983) (possibility that witness' insurance rates may increase if judgment rendered against defendant, who was insured by same carrier, highly speculative, and, thus, any possible relevance of such evidence was far outweighed by prejudicial impact); *Hawes* v. *Chua*, 769 A.2d 797, 810 (D.C. 2001) (under substantial connection test, trial court did not abuse discretion in excluding evidence that defendant physicians and defendants'

expert witness all were insured by same company); *Conley* v. *Gallup*, 213 Ga. App. 487, 488, 445 S.E.2d 275 (1994) (any probative value of evidence that same company insured both defendant and defendant's witnesses was outweighed by prejudicial effect); *Reimer* v. *Surgical Services of the Great Plains*, 258 Neb. 671, 676, 605 N.W.2d 777 (2000) (slight probative value of evidence that defendant's witness and defendant insured by same company was outweighed by prejudicial effect of evidence); *Mendoza* v. *Varon*, 563 S.W.2d 646, 649 (Tex. Civ. App. 1978) (possible bias arising out of fact that defendant's expert witness and defendant were insured by same company insufficient to warrant admission of such evidence in light of potential prejudice to defendant). We find the rationale of the "substantial connection" test persuasive and, therefore, adopt it.

Applying that test, we conclude that Lincer's connection to Connecticut Medical was substantial enough to warrant the admission of evidence of that connection for the purpose of demonstrating Lincer's potential interest in the outcome of the case. As we have indicated, Lincer was a member of Connecticut Medical's business development committee for two years and had been appointed to the board of directors. As a board member, Lincer had a special relationship with Connecticut Medical by virtue of his statutory duty to act in Connecticut Medical's best interests. See General Statutes § 33-1104. Furthermore, Connecticut Medical is a mutual insurance company, and, consequently, as a policyholder, Lincer also was a fractional owner of the company.[7] On the basis of the foregoing, we con-

---

[7] The plaintiff suggests that because Connecticut Medical is a mutual insurance company and, thus, owned by its policyholders, Lincer's financial stake in Connecticut Medical as a fractional owner, alone, was sufficient to warrant admission of the fact that Lincer and the defendant both are insured by Connecticut Medical. We acknowledge that the potential for bias or interest is greater when a witness and the defendant are insured by the same *mutual* insurance company than when they are both insured by an

clude that Lincer had a substantial connection to Connecticut Medical, and, consequently, the trial court's exclusion of the evidence constituted an abuse of discretion.[8]

Our conclusion that the trial court improperly precluded the plaintiff from adducing evidence of Lincer's relationship with Connecticut Medical, however, does

insurance company in which policyholders have no ownership interest. As a general matter, however, we are not persuaded that the outcome of any one case is sufficiently likely to have an effect on the witness' insurance premiums so as to warrant the admission of evidence establishing that the witness and the defendant are insured by the same mutual insurance company. See, e.g., *Otwell* v. *Bryant*, 497 So. 2d 111, 115 (Ala. 1986) (fact that witness and defendant insured by same mutual insurance company insufficient to warrant admission of such evidence in light of potential prejudice to defendant); *Chambers* v. *Gwinnet Community Hospital, Inc.*, 253 Ga. App. 25, 27–28, 557 S.E.2d 412 (2001) (fact that expert witness was insured by same mutual insurance company as defendant was insufficient to establish significant enough financial stake in company to warrant inference of bias or interest, and, thus, relevance of evidence thereof was outweighed by risk of undue prejudice); *Warren* v. *Jackson*, 125 N.C. App. 96, 101, 479 S.E.2d 278 (1997) (connection between defendant's insurance company and witness insured by that insurance company, mutual or otherwise, too attenuated to justify admission of evidence of that relationship in light of potential prejudice to defendant); *Mills* v. *Grotheer*, 957 P.2d 540, 543 (Okla. 1998) (trial court properly excluded evidence that defendant's expert witness and defendant both were insured by same mutual insurance company); *Patton* v. *Rose*, 892 S.W.2d 410, 414–15 (Tenn. App. 1994) (trial court properly precluded plaintiff from eliciting testimony that defendant's witnesses and defendant were insured by same mutual insurance company). Nevertheless, we do not rule out the possibility that a plaintiff may be able to establish that a plaintiff's verdict potentially could result in an increase in the witness' malpractice premiums—for example, when a mutual insurance company is very small and its exposure in the case is very great—such that, in fairness, the plaintiff should be permitted to apprise the jury of the fact that the witness and the defendant are insured by the same insurance company. We emphasize, however, first, that the plaintiff bears a heavy burden of demonstrating that the witness has a real and substantial financial stake in the outcome of the case, and second, that such a case will be the rare exception rather than the rule.

[8] The defendant's argument to the contrary notwithstanding, Lincer's uncertainty as to the precise date of his board membership does not require a different conclusion. The possibility that Lincer's formal appointment to the board may not have occurred until a few days after his testimony does not detract appreciably from the substantial nature of his relationship with Connecticut Medical.

not end our inquiry. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Urich* v. *Fish*, 261 Conn. 575, 580–81, 804 A.2d 795 (2002). "When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it." *Adams* v. *State*, 259 Conn. 831, 841–42, 792 A.2d 809 (2002). "In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." *Higgins* v. *Karp*, 243 Conn. 495, 506, 706 A.2d 1 (1998).

As we have explained, two experts, namely, Lincer and Tortora, testified that the defendant had adhered to the standard of care in performing the cholecystectomy. Two other experts, Cohen and Modlin, testified that the defendant had failed to adhere to that standard of care. Thus, the case hinged on the relative credibility of four expert witnesses.

Nevertheless, the plaintiff has not provided this court with transcripts of the entire trial testimony of each of these witnesses. Although the plaintiff has furnished us with transcripts of Lincer's entire testimony and the direct examination testimony of Cohen and Modlin,[9] she has failed to provide us with transcripts of Tortora's testimony and the cross-examination testimony of Cohen and Modlin. In determining whether the trial court's improper exclusion of evidence concerning Lincer's relationship with Connecticut Medical was

[9] The plaintiff also has furnished this court with transcripts of the entire testimony of the defendant and David Hull, the surgeon who repaired the plaintiff's severed bile duct. Neither the defendant nor Hull, however, testified regarding the standard of care or on the issue of whether the defendant adhered to that standard.

harmful, we necessarily must view that impropriety in the context of the totality of the evidence adduced at trial. Because we are unable to review the substance of Tortora's testimony, we cannot evaluate how forceful or persuasive his expert opinion may have been, nor can we discern the extent, if any, to which Lincer's testimony merely was cumulative of Tortora's testimony. Similarly, because we are unable to review the cross-examination testimony of Cohen and Modlin, we cannot evaluate the extent to which those two expert witnesses may have been discredited by the defendant.

The plaintiff maintains that the harm of the trial court's ruling is evident from the defendant's attorney's characterization of the expert witnesses in his closing argument to the jury, a transcript of which the plaintiff has provided. During that argument, the defendant's attorney characterized the plaintiff's experts as "professional witnesses" who frequently have testified on behalf of other alleged victims of medical malpractice. By contrast, he described the defendant's experts as "doctors who are doctors," a characterization predicated on their testimony that they rarely had served as expert witnesses. According to the plaintiff, the trial court's decision to preclude the plaintiff from introducing evidence of Lincer's relationship to Connecticut Medical allowed the defendant to attack the credibility of the plaintiff's experts while denying the plaintiff the ability to respond effectively by proving Lincer's potential interest in the outcome of the case. Consequently, the plaintiff asserts, the jury was left with the distorted impression that the defendant's experts were objective and credible while the plaintiff's experts were "hired guns" whose involvement in the case stemmed from their philosophical or financial interest in an outcome favorable to the plaintiff.

Although the defendant's attorney's closing argument may have been persuasive, we have not been provided

with a transcript of the closing argument of the plaintiff's attorney, and, therefore, we cannot determine how effective he may have been in addressing the arguments of the defendant's attorney. More importantly, the content and forcefulness of a party's closing argument is only one aspect of the case that a reviewing court must consider in determining the harmfulness of an improper evidentiary ruling. The record with which we were provided on appeal, therefore, is inadequate to determine whether the evidence of Lincer's relationship to Connecticut Medical was so vital to the plaintiff's case that its exclusion likely caused the jury to reach a verdict in favor of the defendant rather than a verdict in favor of the plaintiff.

The judgment is affirmed.

In this opinion the other justices concurred.